30 minutes are to be shared by defendants and 30 minutes for the plaintiff. First is Mr. Manuel Russ for Appellant Brian Vance. Your Honors, I'm Ben Russ. I represent Mr. Brian Vance, as your clerk just said. And subject to the Court's approval, I will be taking five minutes of the collective time. Due to the fact that we're fairly constrained on time, I will move quickly. My client's main argument has to do with the cocaine, powder cocaine to crack cocaine ratio. Just to put very briefly, had the Court accepted Mr. Vance's argument at the trial level, his potential punishment pursuant to the guideline range would have dropped from 262 to 327 months down to 120 to 135 months. So clearly Mr. Vance has a lot riding on this. I will point the Court to Judge Sharpe's ruling after the argument had been made regarding accepting a ratio of 1 to 1 for powder to crack cocaine. And on page 72 of the sentencing hearing transcript, towards the bottom, he states, there are people fighting for 1 to 1 ratios, as Mr. Commissar, who was Mr. Vance's trial counsel, stated. There are people wanting 1 to 1 ratios, but that's not where we are. And I'm not going to substitute my leanings one way or another on those policies or the judgments of those who've worked hard on those policies. And they are what they are and where they are, and there's no reason for me to substitute my judgment for their judgment in this instance. Similar to the argument that was just made, I would submit to this Court that that qualifies as an abuse of discretion on the part of Judge Sharpe, because that sounds an awful lot like he didn't understand that he had the discretion. In fact, that's exactly what he should have done, substitute his judgment if he felt that was necessary. He said he had leanings one way or the other. He says twice that he's not going to substitute his judgment for what the Fair Sentencing Act comes up with in the 18 to 1 ratio. If the judge had a different opinion, that's exactly what the judge should have done. If the judge felt that the 18 to 1 ratio was appropriate in this circumstance, that's exactly what he should have said. He should have said, I agree with what the Fair Sentencing Act has come up with. I think that's appropriate in this case. Instead, he essentially prevaricates. He says, I'm not going to substitute my opinion for what... Prevaricates? Your Honor, I don't think it states very clearly what he's saying. He's saying he substitutes his... Prevaricates means lie. You don't mean that. No, not lie, Your Honor. I said he perhaps equivocates would mean what I was trying to say. That might be better, yes. But I wouldn't say he was lying, no. I was saying that he is not stating what he means in a clear manner. I think that he absolutely has the authority to substitute his judgment for that if he feels appropriate. The Kimbrough case states that these and his wording doesn't state that he fully understands that despite he says that he does. I would say that that's an abuse of discretion on his part. I'd say that that permits this court to review his sentence in full. I won't belabor the point regarding many of the arguments that were made at the trial court level. I think the court's well aware of the reasons why the cocaine to crack ratio was amended in 2010. I still think that there is good evidence that's cited in the sentencing hearing that would show that 18 to 1 as a ratio has still not gone far enough to amend what has been done over the past 25 to 30 years regarding that ratio. The government argued in their brief, and I'll address just briefly, that Mr. Vance ultimately did receive a downward variance to 200 months. But considering that Judge Sharp had specifically rejected the argument that the crack to cocaine variance should be 18 to 1, I don't think that can be used as a basis to say that everything is put into one big pot and he came out with less than what the guidelines say and therefore he's accepted that argument. I would argue that that's for the different reasons that are cited, that Mr. Vance had no prior criminal record before this arrest, that he had a family that he was being taken away from. So I think that the judge arrived at that variance for separate reasons. But I would say that the court has the authority to address this sentence. I think that there is no scientific basis for saying that crack cocaine is more addictive than powder cocaine, which was originally the reason for making the punishment so much greater than it had been. And if there are no other questions, I have 10 seconds left. So I appreciate your court's time. Thank you, Counsel. Good morning, Your Honors. May it please the court, my name is Ben Perry and I represent Defendant Appellant Demetrius Duncan. I raised essentially six issues in my brief in this matter. Today I want to focus primarily on the Fifth Amendment and Eighth Amendment issues that were raised. I certainly don't waive any of the other issues. I'd rely on the pleadings. I'd also explicitly adopt the forthcoming arguments by counsel for Mr. Parnell and Mr. Young as we've kind of tried to divide this up a little bit so we're not all standing up here saying the exact same thing on common issues. At the time of the charged conduct in this case, Mr. Duncan was a 29-year-old intellectually disabled individual that suffered from numerous serious health problems stemming from a brain hemorrhage suffered at his premature birth. And while it's certainly true that Mr. Duncan had prior felony convictions for cocaine offenses, under Tennessee law the grand total quantity for all of the offenses that he had been convicted of could equal as little as 1.1 grams, which is essentially a packet of sugar, a single packet of sugar. And prior to trial, the government had offered Mr. Duncan 262 months if he would forego trial. That's a key point because it unequivocally demonstrates that the government felt that that sentence would satisfy the requisite societal interest in prosecuting and convicting and sentencing Mr. Duncan. It was only when it became clear that Mr. Duncan was going to trial that the government filed the 851 enhancements, thus unilaterally ratcheting up the potential exposure to a mandatory life sentence without the possibility of any check or balance anywhere along the way. It essentially clicked a button on the computer sitting in his office and went to mandatory life. I think that's a quintessential illustration of vindicativeness. It's further bolstered by the fact that the government did not seek mandatory life sentences against the so-called kingpins of this case and the murderers in this case who were death eligible when charged. Instead, they only sought life sentences against the three individuals that actually exercised their right to a trial and went to trial, and those are the three defendants that remain before you here today. Even though the district court recognized at sentencing that the people that the three least culpable people are receiving the harshest sentences, the district court failed to see the clear vindictiveness of the government and failed to act. I would respectfully submit that that is a blatant due process violation and requires attention and remand from this court. As we stand here today, Mr. Duncan is sentenced to die in prison. As the Supreme Court recently held in Miller v. Alabama, it's a basic precept of justice that punishment for a crime be graduated in proportion to both the offender and the offense. The court further held that our cases require individual sentencing for those facing the most serious penalties to not lessen a defendant's constitutional rights. At sentencing in page IDs 13, 683 through 684, the district court specifically stated that 240 months would be sufficient but not greater than necessary for Mr. Duncan, and that the sentence to die in prison is not individualized, yet it still failed to act. Other than execution, there is absolutely no penalty harsher than life without parole. It is grossly disproportionate to the gravity of his offense. It does not account for his mental disabilities. It does not comport with sentences imposed in the same jurisdiction. It doesn't comport with sentences imposed in the same case or in any other jurisdictions around the world. Thus, under the narrow proportionality principles, it is violative of the Eighth Amendment's prohibition against cruel and unusual punishment as applied to Mr. Duncan, and this court should order a resentencing not limited by mandatory life sentence. Again, I would adopt the forthcoming arguments of the council and ask the court to grant Mr. Duncan the relief that was prayed for in his brief. Thank you, counsel. May it please the court. Jim Thomas on behalf of Chris Young. I'd like to introduce my co-counsel, Chandra Flint. I'm going to try to address four issues in the time allotted. What I've referred to is the wiretap interpretation issue, the dual role testimony issue, the Fifth Amendment due process sentencing issue, and the Eighth Amendment due process, I mean the Eighth Amendment cruel and unusual punishment issue that Mr. Perry addressed in part. Officer, the case agent in this case was an Officer Whitsitt, and his testimony was the cornerstone of the government's case, especially as to Mr. Young. There were nine days of trial testimony. Agent Whitsitt, Officer Whitsitt testified on five of those nine trial days. Now, Mr. Young was previously unknown to the government and surfaced only because of the fortuity of being taken down with a conspiracy kingpin, Robert Porter, on December 10, 2010. Now, the government, as I read its brief, the government doesn't try to defend Officer Whitsitt's wiretap interpretation testimony on the merits, and when I talk about his wiretap interpretation testimony, I mean interpretations of opinions about the gist of what's on some of these wiretap recordings. The government primarily relies upon what it characterizes as the defense's lack of a contemporaneous objection to the opinion, to the wiretap interpretation testimony. But, Your Honors, the issue about the interpretation was framed very early on in the government's case. The defense counsel objected to Officer Whitsitt's interpretation of what a quarter meant, and the government then took the position that Officer Whitsitt was qualified to give interpretations. And then the defense counsel then asked for a continuing objection at that point. Now, the government acknowledges at page 49 of its brief that if a defendant fails to object to trial or does not state the specific ground for his evidentiary objection, and that ground is not apparent in context, then the appellate court reviews for plain error. Well, Your Honors, in context, defense counsel was clearly objecting to this interpretation testimony. The government said that Officer Whitsitt could give interpretations, the defense objected, and I don't really know in context how it could have been any clearer. Now, two points, so it's our position that the objection was properly preserved. We rely primarily upon this Court's 2013 opinion in United States v. Freeman, and I'd like to echo two points from Freeman, or a parallel to this case. Officer Whitsitt spoon-fed his interpretations of the phone calls to the jury. Again, that's a quote from Freeman. And number two, an agent testifying as a lay witness may not explain to the jury what inferences to draw from recorded conversations involving ordinary language. At that point, his testimony is no longer evidence, but becomes argument. And that's what happened here. Now, more recently, this Court decided United States v. Kilpatrick, and the Kilpatrick opinion makes a very clear statement, and it's tracking the Eighth Circuit's decision in United States v. Peoples. But Kilpatrick said that lay opinion testimony interpreting contents of intercepted communications is admissible only when the officer is a participant, or has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred. None of those criteria fit here. And unlike in Kilpatrick, the error was not harmless. Now, moving on to what we've characterized as the dual role testimony, the testimony of both Officer Whitsitt and Officer McClintock, who together, taken together, testified for. You know, what was it about the testimony that would have prevented the jurors from being able to ascertain a distinction between the fact testimony and the expert testimony being given by the agent, such that your client's substantial rights were not violated, and that the error, if it was an error, was harmless. You know, we have this Lopez-Medina case, a modern case, from which we could derive that if it appears that there was no adverse outcome, I know the outcome was adverse in the sense that there was a conviction, but if otherwise there was no problem from the testimony, we could deem that your client's substantial rights were not violated. What would you say, taking into account cases like Lopez-Medina and Marden and some of the other cases that comment on that? Yes, sir. Your Honor, I guess the problem here, again, and I don't mean to repeat myself about this, six days of testimony between these two officers, but it was the, and I'm quoting from Freeman here, I guess, but it was the aura of expertise and authority that was imparted to these officers. The, and for all the jury knew, given the way the testimony was adduced, the officers were relying on conversations and other information that was not available to the jury. And at the very least, we would submit that the court should have given the pattern instruction 7.03A, which clearly demarcates fact testimony from opinion testimony. The only instruction the district court gave was pattern instruction 7.03, which addresses only opinion testimony and doesn't draw the distinction between fact and opinion. So do you want to point to any specific opinion testimony that you think was prejudicial to your plan as a result of the failure to give the instruction? Well, there was a great deal of testimony about the meaning of numbers. Mr. Koshy, the assistant U.S. attorney, would ask Officer Whitsitt, you know, after listening to a recorded conversation, well, what did 55 mean? And Officer Whitsitt would say, you know, $5,500. And where did that come from? And again, the jury could only have believed that Officer Whitsitt must have known things they couldn't interpret for themselves. But it was just the holding up of Officer Whitsitt and to a lesser degree Officer McClintock as experts, when they weren't offered as experts, were not identified as experts, that we would say was prejudicial and constituted reversible error. Well, a lot of that testimony was definitional. The agent was explaining what certain terms meant. And the jury knew that he was an agent working with drug cases. So that, assuming he was providing accurate definitions, wouldn't have been all that unduly prejudicial in and of itself, unless you're saying that because of that sort of testimony, the agent's other testimony that might have been more critical, the jury might have been more impressed with that because of the aura of authority and that kind of thing. Yes, sir. Well, I guess what we would say is that it was the combination of the wiretap interpretation testimony and combined with the dual role testimony when Officer McClintock and Officer Whitsitt were testifying in both expert and non-expert capacities without any differentiation being made to the jury, either by way of jury instructions or by cabining the testimony as it went along. Fortunately, Mr. Perry covered the high points of our joint Fifth Amendment and Eighth Amendment arguments. But we contend that the government's eve of trial filing of the Section 851 notice against Mr. Young, which mandated his mandatory life sentences with no role for either the jury or the court to play, constituted a Fifth Amendment due process violation. And we also say, for different reasons, as articulated in our brief, that Mr. Young's mandatory life sentences on the facts of this case and given his youth constituted cruel and unusual punishment. And I see my time is up. Thank you. Thank you, Counsel. Good morning again, Your Honors. Melissa Salinas for Alto Parnell, and I'd like to introduce law student Will Nolan. Good afternoon, Your Honors, and may it please the Court. My name is Will Nolan, and I am here on behalf of appellant Alto Parnell. I would like to reserve two minutes of my time today for rebuttal. The facts of this case are stark. Mr. Parnell has been denied a fair trial and has erroneously received two life sentences without release for nonviolent drug offense at the age of 32. Of the many issues that warrant reversal in this case, with my limited time today, I would primarily like to focus on the erroneous life sentence imposed under the conspiracy charge, which is count one, and then with any time remaining, I'd like to focus on the erroneously imposed life sentence under the restricted zone offense, which is count four. In regards to the conspiracy charge, count one, the district court erred because it failed to apply the mandates of Pruitt and Sweeney in this case. The government's 28J crystallizes the problem below. The government states that Sweeney stands for the proposition that Pinkerton principles, as articulated in USSG 1B13, apply to the statutory context of a conviction under 846, sorry, a sentence under 846, and determine the penalty and the mandatory minimum that applies is based on the individualized attribution based on the scope of the defendant's jointly undertaken criminal activity as well as if any of the acts of other co-conspirators are reasonably foreseeable within the scope of that jointly undertaken activity. I'd also like to... Excuse me for interrupting. There was a statement in your brief that I was concerned about where you state that, and this is on page 43, that evidence that an alleged co-conspirator, for example, knew about drugs, guns, money, and murder committed by the other alleged co-conspirators is clearly irrelevant and unfairly prejudicial. That statement would seem to be inaccurate and legally incorrect. And there's no cases supporting the statement. How would you defend putting a statement like that in the brief? Are you referring to our opening brief, Your Honor? Yes, on page 43. In that context, I believe what we were trying to convey was that the evidence of those other acts had limited value in the scope of what had to be proven at trial, which was that there was an agreement, there were acts committed in furtherance of that agreement, and that the defendants participated in that. In terms of that, I think we were trying to put in context that that sort of evidence seemed to not be all that relevant and more prejudicial in nature than what it was worth. And that's why we think that it was improper under the circumstances. Now, returning to the argument about the erroneous life sentence under the conspiracy charge, I think it is important to point out that Alain made the mandates of Pruitt and Sweeney, which said Pinkerton principles apply at sentencing, applicable to jury determinations, because those are facts that increase the minimum penalty that an individual faces. So what that means is the jury has to determine the scope of the defendant's jointly undertaken criminal activity and whether actions by his co-conspirators are reasonably foreseeable to that, the scope of his conspiratorial agreement. I think it's important to mention the position of all the other circuits in this case. With the exception of the 11th... Sorry, the D.C. Circuit, all the circuits hold that Pinkerton principles apply to determinations of drug quantity either for conviction purposes or for sentencing purposes. And the cases that have addressed this issue after Alain have all held that the jury must determine, for sentencing purposes, individualized quantities, the scope of the agreement, and whether or not quantities outside of that would be reasonably foreseeable to the individual. And I think it's also important to mention that we did not... It's important to mention that it's not clear that... If the jury was properly instructed on these elements, it's not clear that the verdict would have been the same, beyond a reasonable doubt. Because for Mr. Parnell, most of the evidence against him consisted of 19 calls, most of which showed a buyer and seller relationship. So during the course of his calls, he had calls spanning from August till November. And the ones from August until about mid to late November all showed that he was buying very small quantities of drugs from Mr. Vance or was inquiring to buy those quantities. And our position is that if he entered some sort of conspiratorial agreement, it would have only been later towards the end of it, which is the late November period. And that's why we think that Mr. Parnell... The jury could have found differently. And the record does suggest that the scope of Mr. Parnell's participation was limited. And because the jury never had a chance to make that determination, we do believe that this court cannot conclude that it was clear beyond a reasonable doubt that the jury would have reached the same result if properly instructed. With my remaining time, I would like to turn to the erroneously imposed life sentence under the restricted zone offense, count 4, which is the 860. The district court erred here because under Elaine, anything that increases the mandatory minimum must be found by the jury. And here, the jury only found a detectable amount of restricted substances attributable to Mr. Parnell within the restricted zone. Because they did not find the amount required to trigger the penalty provisions of 841B1A, which involves the mandatory life without release penalty, the judge committed... The district court committed an Elaine error because it's sentenced beyond what the jury found. And I think it's helpful to point out that under the 860 offense itself, by its plain language, you can only impose a mandatory life sentence for a detectable amount if you have multiple offenses under the 860 offense. And 860 is a separate offense, as defined by this court, in United States v. Osborne. And so the fundamental issue here is that Mr. Parnell should have been sentenced in accordance to 841B1C, which contains no mandatory life without release provision. And for that reason, we believe there was an Elaine error. And I actually believe the time was not set for my rebuttal. So I see I have 2 1⁄2 minutes left. If there's no further questions, I will sit down and reserve the rest of my time for rebuttal. Well, if we accepted your argument about Elaine, wouldn't we have to rule contrary to Almodovar's Tories, which is still good law, even though some authorities say that there are problems with it? How would you take into account Almodovar's Tories in making this argument that you just made about Elaine? You're referencing how it applies to the count 1 and count 4 arguments I just made, Your Honor? I don't know how the counts are numbered. I just don't remember how they were numbered. Absolutely. The conspiracy charge and the restricted zone charge. Yeah, the sentencing in relation to those. Right, Your Honor. So we do think— Drug quantity issues. Right. What we believe is that that argument sort of stands separately from the arguments that we made in relation to count 1 and count 4 for what the jury found and what the jury should have found in terms of drug quantity. And so in terms of Elaine Torres by its very own terms in light of recent Supreme Court precedent, we do agree that it stands on shifting grounds. I think the question is— It's an element that has to go to the jury. I see your point, Your Honor. In that regard, the mandatory—the way we see it is that what this court has held in Pruitt and Sweeney is that an individual is sentenced in a conspiracy based on their conspiratorial agreement. And if that conspiratorial agreement scope encompasses the whole of the conspiracy, then they can be sentenced to the whole of the conspiracy. However, we believe these findings must be made on the record. And in United States v. Campbell, in the sentencing guideline context, this court held that for purposes of sentencing, there needs to be a particularized findings about the scope of the individuals jointly undertaking criminal activity and whether or not actions of co-conspirators beyond that are reasonably foreseeable to that agreement and scope. If there are no further questions? All right. Thank you. Thank you. May it please the Court, Phenola Tessier on behalf of the United States. If I may, I would like to address the defendant's arguments in the order in which they presented them. First, with respect to Mr. Vance, I believe that defense counsel is selectively quoting from the sentencing transcript. At the beginning of the colloquy that defense counsel referenced, the judge states, quote, clearly I have authority to vary from that ratio. And then at the end, he says, quote, I think justice can be done in this case using and applying the 18 to 1 ratio. It's appropriate in this case. In that case, it's consistent with the 35-53 goals. So I'm going to apply that 18 to 1 ratio. So I think the record is clear that the judge appreciated his ability to apply something other than an 18 to 1 ratio but believed the 18 to 1 ratio was appropriate. And defendant significantly below guideline sentence was substantively reasonable. Addressing Mr. Duncan's arguments. First, with respect to the Eighth Amendment arguments, this court has repeatedly held that life sentences for drug charges do not violate the Eighth Amendment. I believe this court is bound by that prior precedent. As to their due process arguments, both the Supreme Court and this court in Ladeau have noted that plea bargaining involves a mutuality of advantage to defendants and to the government and is a necessary feature of the robust plea bargaining process. It's not a due process violation if... I'm sorry, in Dijon, this court said that this court has consistently indicated that when the right asserted is to go to trial, an additional charge cannot form the substantive basis of a vindictive prosecution claim. With respect to Mr. Young's arguments about the opinion testimony, as Your Honor, Judge Clay noted, it's not clear that the complaint of opinion testimony really prejudiced the defendants in any way. With respect to Mr. Young in particular, I think he overlooks the fact that two witnesses identified him as having purchased cocaine from Robert Porter. And he was, in fact, arrested in the middle of a large drug purchase with $10,000 either in his pocket or on the ground underneath him, 190 grams of crack and 160 grams of cocaine... I'm sorry, I have those numbers backwards. 190 grams of cocaine and 160 grams of crack in Mr. Porter's car and a loaded gun in the console of Mr. Young's car. The only real objection he has to the opinion testimony here is to the interpretation of numbers as referring to thousands of dollars. But, of course, another witness at trial also testified that those sorts of numbers were used to refer to thousands of dollars. And finally, with respect to Mr. Parnell's Sixth Amendment arguments, I'd first like to note to the Court that the Supreme Court denied certiorari in Meeks earlier this week. That was the case that we filed a 28-J letter appending our brief to the Supreme Court in opposition. As we noted to the Supreme Court in that brief, there is some conflict in the circuit between the decisions of Robinson and Sweeney. But it's because of that conflict that any error here was not plain. I'd also note that deciding which case was not right won't have an impact on cases going forward because, as we told the Supreme Court, the government's current policy is to charge defendants with defendant-specific quantities of drugs. So this kind of issue shouldn't come up often again. And finally, with respect to the claims about the 860 charge, I think Mr. Parnell is simply misreading the statute. In Section 841 B.A.1, Congress clearly stated that if any person commits a violation of this subparagraph, that is the paragraph that lists out the quantities of drugs, or of Section 860, after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment. And it's that language that the Court was relying upon in sentencing Mr. Parnell to the life sentence on the 860 charge. If the Court has no questions, we are happy to rest on our briefs. On your last point, with regard to the 860, so your point is that the prior convictions don't have to be convictions involving a restricted area as long as the prior convictions are either 841A or 860 convictions. That is partially correct. There are two separate sentencing provisions. There's the sentencing provisions under 841 and the sentencing provisions specifically under 860. I will admit that the statute is not a model of clarity in the sense that it sets up two separate systems, but if you look at the language of each section, it is clear. 860 says that if you're being sentenced for a protected zone charge, the mandatory minimums and statutory maximums key to the mandatory minimums and maximums for certain sections of 841. They're double. Now it also says if you have a prior conviction under 860, you triple. And if you have two prior convictions under 860, so this is your third 860 conviction, then you get life. 841 separately, but you still have to go to 841 to determine what you're doubling or tripling. Now when you go to 841... Except with regard to the mandatory life. If you have three convictions under 860, yes, it's a term of life in prison. But if you have one conviction under 860, then you go to 841. So what was his 860 sentence? He doesn't have two prior 860s. But when you get to 841, it then additionally says if you have two prior felony drug convictions of any kind and an 860 conviction, then you get life as well. Does that 860 conviction have to be a final conviction prior to the time of sentencing? I apologize if I'm not being clear. You don't have to have prior 860 convictions. Under the plain language of 841, if you have two prior felony drug convictions of any kind and then you get an 860 violation, then you have a life sentence. It's essentially saying that... So it's an 860 violation, not conviction. That's correct. It says if any person commits a violation of this subparagraph or of 860 after two or more prior convictions for a felony drug offense have become final. So what that is saying is if you violate 860 after you had two prior felony drug convictions, then you have a life sentence. And Parnell's situation was? That he had two prior felony drug convictions prior to his 860 violation. And that's why he has a life sentence. It's confusing because there are two ways to get to that life sentence. One is by three violations of 860, and one is by two prior felony drug convictions and then an 860 violation. And then it's effectively the same sentence. Thank you. For those reasons, we request that the court affirm the convictions and sentences. Thank you very much. I'd like to first try and clarify my response to Judge Clay's question earlier about Almendarez-Torres. What we're arguing under the conspiracy count is that the Pinkerton principles, as articulated in Sweeney, apply to drug quantities. And that is a separate argument than the Almendarez-Torres argument that we made, which has to do with prior convictions. And then in response to the position taken by the government, the confusion here is that 860 is a separate violation than 841. So what it says in 840b1a is foreign offenses involving more than 280 grams of crack cocaine here, for example, if you've committed a violation of this subparagraph or of 860. And because this is the key part, 860, you're not violating 841a there. When you violate 860, it's a quantity amount. So what it's saying is to get there under that provision, you have to have more than the threshold amounts. So for the 860 violation, you need to possess amounts in excess of 280 grams of crack cocaine, for example, in order for this provision to apply. And that's what's confusing about this. But it's important to remember it's the triggering language both for the 860 offense, and then there's also triggering language separately for an 841a offense. And in conclusion, I would like to ask this Court to reverse Mr. Parnell's convictions and grant him a new trial or vacate his sentence and remand for resentencing. Thank you, Your Honors. Thank you, Counsel, and thank you for participating in this program. You have done a very nice job for your client. With that, the case will be submitted, and the clerk may call the next case.